UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH MCCAIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>)<br>Defendant. ) | Case No. 12 C 9652<br><br>Judge John W. Darrah |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth McCain seeks to reverse and remand the Social Security Administration Commissioner's decision denying his claim for disability benefits. Defendant, Commissioner Carolyn W. Colvin ("Commissioner"), has filed a cross-motion for summary judgment, requesting that the Court affirm the final decision. For the reasons explained below, McCain's Motion [11] is denied; the Commissioner's Motion [23] is granted; and the Commissioner's final decision is affirmed.

## BACKGROUND

In March and April 2009, McCain applied for Child's Insurance Benefits ("CIB") and Supplemental Security Income Benefits ("SSI"), alleging a disability onset date of June 1, 1995. (Administrative Record ("AR") 190-99.) His application was denied by the Commissioner initially and on reconsideration. (AR 105-14, 124-26.) McCain then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 2, 2011. On May 25, 2011, the ALJ issued a decision finding McCain not disabled. (AR 27-39.) The Appeals Council denied further review of McCain's claim on October 4, 2012. Thus, the ALJ's decision is the final

decision of the Commissioner and is ripe for review. *See* 20 C.F.R. § 404.981; *Eads v. Secretary of Health and Human Services*, 983 F.2d 815, 816 (7th Cir. 1993).

*Medical and Vocational Background*

McCain was born on December 21, 1985. (AR 193.) His mother is an alcoholic, and his father has spent most of his adult life in prison. (AR 260.) McCain has lived with his grandmother since he was born, and she adopted him when he was five. (AR 260.) McCain was found by school officials to have a cognitive disability, and he attended special education classes until he dropped out of school in tenth grade. (AR 50-51, 215, 276.) At age 15, he was reading at a third grade level and attending special education classes or receiving social work services 1,150 minutes per week. (AR 280.) He has held only one job, which lasted for a week in June 2005 at a fast food restaurant and earned a total of $99.13. (AR 200, 211-12, 332.)

On August 12, 2009, McCain was evaluated by a psychologist, Dr. Robert Neufeld, Ph.D., who diagnosed him with schizoid personality disorder and rated his Global Assessment Function at 60. (AR 333.) Dr. Neufeld did not document any problems associated with anger and stated that McCain "had no psychopathology other than having a rather lackluster personality structure without any well-defined features." (AR 333.) McCain has never received any psychiatric treatment or been prescribed any psychiatric medications. (AR 34.)

*Administrative Hearing and Decision*

On May 2, 2011, a hearing was conducted before ALJ Regina Kossak in Chicago, Illinois. Four individuals testified at the hearing: McCain; Angela McCain-King, his aunt; Dr. Larry Kravitz, an impartial medical expert; and Richard Hamersa, an impartial vocational expert ("VE"). The ALJ also considered a letter written by McCain's grandmother, as well as other documents about McCain's medical and educational history.

At the hearing, McCain testified regarding his cognitive impairments and limitations. He stated that he cannot read a newspaper and does not have a driver's license because he failed the written test twice. (AR 54-55, 58, 62.) He stated that he does jobs around the house, including raking grass, making his bed, and taking his niece, who lives with him and his grandmother, to school. (AR 57.) He also testified that he does not do his own laundry because he broke the washing machine; that he can make sandwiches, but he does not use the microwave or the stove because he forgets things and they burn. (AR 57, 59, 62-63.) He stated that he plays basketball and plays video games, the latter sometimes for thirty minutes at a time. (AR 61.) He also testified that he did not think he could work because he is "slow at things." (AR 62.) He did, however, testify that he thought he could do an "easy" job like stocking shelves at Jewel. (AR 55, 62.)

His aunt, McCain-King, testified, among other things, that McCain was getting "worse" at following directions and remembering things (AR 71-72); that he can go shopping so long as he used a list (TR 75-76); that she tried to get him a janitor job and a job at McDonald's (AR 72-73); that she gives him little jobs, like washing a car, to make a little money (AR 77); that she did not think he can do a job (AR 81-82); and that she tried to take him to a mental health place but he did not want to wait to see the psychiatrist and did not go back (AR 79-80, 84).

Dr. Kravitz, a psychologist, testified and opined that McCain did not meet or equal the Commissioner's Listing of Impairments 12.02 with the B criteria. (AR 90.) He opined that McCain has a cognitive deficit and characterological personality traits that are maladaptive and dysfunctional in society; however, Dr. Kravitz testified there was little support for a diagnosis of schizoid personality disorder, which was based on a one-time impression by Dr. Neufeld. (AR 86-87.) Based on the record, Dr. Kravitz testified that McCain's impairments cause moderate

limitations on concentration, persistence, or pace; moderate limitations on social functions; and mild to moderate limitations with his activities of daily living. (AR 90-91.) Dr. Kravitz further testified that McCain would be limited in the types of work he could do to "fairly simple" tasks. Specifically, Dr. Kravitz said those tasks would need to be routine, consistent, repetitive and predictable, with only incidental public contacts, limited interactions with other employees and instructive supervisory contacts. (AR 94-95.)

Hamersa, the VE, testified that McCain had no past relevant work experience. (AR 96.) The ALJ asked Hamersa hypothetically if there are available jobs for someone with McCain's limitations, including very limited reading, short, simple instructions, limited contact with other employees and the public, limited supervision, and a routine, predictable and consistent environment. Hamersa responded affirmatively and stated that there are available jobs as a janitor, kitchen helper or hand packager. (AR 96-97.)

Following the hearing, on May 25, 2011, the ALJ issued a decision finding that McCain was not disabled within the meaning of the Social Security Act (the "SSA"), from June 1, 1995 through the date of the decision. (AR 27-39.) In making her decision, the ALJ made findings according to the requisite five-step analysis, discussed in more detail below: (1) McCain had not engaged in substantial gainful activity; (2) he had a severe impairment in the form of cognitive impairment; (3) his impairment did not meet or equal the criteria of a Listing of Impairments, 20 CFR 404.1520(d), under the SSA; (4) he had residual functional capacity to perform a full range of work at all exertional levels but with certain non-exertional limitations, including limited reading and simple instructions, in a routine, predictable and consistent environment; and (5) McCain was able to perform jobs that exist in significant numbers in the national economy.

**LEGAL STANDARD**

Section 405(g) of the SSA grants federal courts the authority to review the Commissioner's final decision and enter a judgment, affirming, modifying, or reversing the decision, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The scope of judicial review is quite limited; a district court will affirm the ALJ's decision as long as it is supported by substantial evidence in the record and no error of law occurred. *Id.*; *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This is more than a scintilla but can be less than a preponderance. *Skinner*, 478 F.3d at 841. "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) (internal citations omitted). In determining whether substantial evidence supports the ALJ's decision, the court will review the entire administrative record but will not reweigh evidence, reevaluate facts, make decisions of credibility, resolve conflicts in the evidence, or substitute its judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

**ANALYSIS**

The determination of whether a claimant suffers from a disability as defined in the SSA is conducted through a five-step inquiry, evaluated in sequence: (1) whether the claimant is engaged in substantial gainful activity, *i.e.*, is employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner as conclusively disabling (*see* 20 C.F.R. § 404, Subpt. P, App.);

(4) whether the claimant can perform his past relevant work[1]; and (5) whether the claimant is capable of performing work in the national economy. 20 CFR § 404.1520; *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant has the burden of proof for steps one through four; the Commissioner has the burden of proof for step five. *Clifford*, 227 F.3d at 868.

*The ALJ's Step Three Finding that McCain Did Not Have a Listed Impairment*

McCain challenges the ALJ's finding at step three that his impairments do not meet or equal a listed impairment. He argues that the ALJ improperly discredited statements made by McCain's aunt and grandmother and that the ALJ ignored portions of Dr. Kravitz's testimony regarding McCain's limitations.

At step three, an ALJ must evaluate whether a claimant is so severely impaired that he is disabled, regardless of his age, education and work experience. 20 CFR § 404.1520(d). To satisfy this step, the claimant's condition must meet or equal one of the impairments listed in 20 CFR Part 404 Subpart P Appendix 1. With respect to mental disorders, a claimant will be found to be disabled if he has at least two of the following functional limitations, described as "paragraph B" criteria: "marked" restrictions on activities of daily living; "marked" difficulties in maintaining social functioning; "marked" difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

In this case, the ALJ, applying the "paragraph B" criteria, found that McCain's mental impairments, considered singly or in combination, did not meet or equal the listing 12.02 and 12.08. (AR 30.) First, the ALJ found that McCain had mild restriction in his activities of daily

---

[1] The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that the disability must be established.

living. The ALJ relied on McCain's testimony and also his statements to Dr. Neufeld that McCain plays basketball, plays with his child, does chores, walks his niece to school, and takes public transportation by himself; the ALJ also relied on his aunt's testimony that he can go to the store with a list. (*Id.* 30-31.) The ALJ next found that McCain had moderate difficulties in social functioning, noting, among other things, that McCain spends time with his family and friends on a daily basis, does not have a problem getting along with others, and is very respectful to authority figures. The ALJ then found that McCain has moderate difficulties with respect to concentration, persistence or pace, noting that while his aunt testified he has problems following through, McCain testified that he can do some activities requiring concentration or persistence, such as video games, for thirty minutes. Lastly, the ALJ found that McCain had no episodes of decompensation of extended duration. (*Id.* 31.) The ALJ also noted that her finding was supported by Dr. Kravitz's testimony that McCain's impairment did not meet or medically equal a listing. (*Id.*)

In making this finding, the ALJ discounted some testimony by McCain's relatives, finding them to be both "somewhat credible"; McCain argues this was error. (AR 36.) The ALJ described McCain's aunt's testimony as consistent with the record that McCain has some cognitive limitations; however, the ALJ did not find that his aunt's testimony credible to show that he was totally disabled. Furthermore, the ALJ found that McCain's emotional or psychiatric condition, as described by his aunt and grandmother, was not supported by objective evidence in the record. (*Id.*) In particular, the ALJ noted that McCain had never sought psychiatric treatment or been prescribed psychiatric medicine. (*Id.*) The ALJ also noted that when McCain sought medical treatment for unrelated physical issues, his mental status examinations were

7

normal. (AR 34, 36.) The ALJ further noted that McCain had never been in trouble with the law or been observed by the police to have psychiatric issues. (AR 36.)

According to Social Security Policy Interpretation Ruling, SSR 06-03P, 2006 WL 2329939 (S.S.A. Aug. 9, 2006), an ALJ should explain the weight given to opinions by family members and "consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." In this case, the ALJ properly explained the weight given to statements by McCain's relatives based on her consideration of other evidence in the record. It is not this Court's function to reweigh evidence or make decisions of credibility. *Clifford*, 227 F.3d at 869.

McCain cites to *Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir. 2011), where the Seventh Circuit reversed the denial of benefits, in part because the ALJ issued a "perfunctory" opinion that used "boilerplate" language, failed to explain her adverse credibility determination, and discussed "so little of the evidence." Unlike *Martinez*, the ALJ in this case discussed the evidence supporting her conclusions and gave reasons why she found the relatives' statements to be "somewhat credible." It is clear that the ALJ evaluated the relatives' statements in the context of the rest of the record. Therefore, the ALJ committed no error in discounting some of McCain's relatives' statements.

McCain also complains that that the ALJ ignored Dr. Kravitz's testimony that, if he had relied upon the relatives' statements instead of the other evidence in the record, he would have changed his opinion to be that Plaintiff had "moderate to marked" limitations. However, as discussed above, the ALJ explained the reasoning for discounting the relatives' statements over the other evidence in the record, and as such, reasonably did not adopt the portion of Dr. Kravitz's testimony that was based on the relatives' statements. An ALJ is in a "unique

position" to observe a witness, and for this reason, an ALJ's credibility determinations are not normally disturbed. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). As such, the ALJ properly weighed Dr. Kravitz's testimony.

Substantial evidence supports the ALJ's finding that McCain's impairment does not meet or equal a listing. As discussed above, the ALJ supported her finding with an explanation of the evidence she relied upon, thus building a "logical bridge" between her conclusions and the evidence. *Jones*, 623 F.3d at 1160. That finding is also consistent with a report prepared and submitted by a state agency doctor, Donald Henson, who opined that McCain's personality disorder was not a severe impairment and that he had only mild limitations under the Paragraph B criteria. (AR 36; AR 345.) Likewise, Kirk Boyenga, Ph.D. submitted a state agency report in February 2010 that affirmed the initial rejection of McCain's disability claim for lack of impairment. (AR 349-51.) An ALJ "may properly rely upon the opinion of [state agency] medical experts." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ's finding at step three is affirmed.

*The ALJ's Finding that McCain had Residual Functional Capacity*

Before moving from step three to step four, an ALJ must assess a disability claimant's residual functional capacity ("RFC"). 20 CFR 404.1520(a)(4). The ALJ then uses that assessment at both steps four and five. *Id.* In this case, the ALJ found that McCain had the RFC to work at all exertional levels, with certain non-exertional limitations, including very limited reading, short and simple oral instructions, incidental public contact, no joint tasks, limited interaction with other employees, limited supervision, in a routine, predictable and consistent environment. (AR 37.) The ALJ stated that this finding was based on Dr. Kravitz's opinion. (*Id.*)

9

McCain argues that the ALJ committed an error because the ALJ's limitations did not exactly match the testimony by Dr. Kravitz, who testified, *inter alia*, that McCain would be unable to handle unpredictable, high levels of work stress; would need a rote, repetitive work environment; would need supervisory contacts that are task-focused and instructive in nature, offered in a neutral tone; and would need simple, routine tasks that could be performed independently. (AR 93-95.) McCain is quibbling over semantics, as it is clear that the ALJ reasonably applied the limitations put forth by Dr. Kravitz. Furthermore, an ALJ considers medical opinions together with the rest of the relevant evidence in the record and is not required to adopt a doctor's medical conclusion verbatim. 20 CFR § 404.1527(b)-(c); *see also Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 886 (N.D. Ill. 2003) ("Certainly, plaintiff does not mean to suggest that an ALJ must always take his or her residual functional capacity assessment directly from the mouth of a physician."). Therefore, the ALJ did not commit an error in paraphrasing Dr. Kravitz's testimony when assessing McCain's RFC.

McCain also argues that the ALJ committed an error because she found McCain's testimony regarding his symptoms not credible to the extent that they were inconsistent with objective medical evidence. However, the ALJ's assessment of McCain's credibility was not as limited or narrow as McCain contends. Rather, the ALJ considered a wide variety of factors, including testimony about his daily activities, objective medical evidence, his treatment history, and judged McCain's credibility based on inconsistencies in the record. (AR 34-36.) For example, the ALJ noted that McCain "may have exaggerated some in his testimony that he could not read a simple headline . . . . as his reading skills have previously been described as at least the third grade level." (AR 35-36.) The ALJ pointed to McCain's Individual Education Plan, which listed his strengths as "he likes to read, plays basketball and video games, and good social

10

life." (AR 35.) The ALJ further noted that McCain had testified that he thought he could possibly work a job stocking shelves. (AR 35.)

It is proper for an ALJ to consider factors such as daily activities, objective evidence, and the claimant's testimony, and to make credibility assessments accordingly. *See, e.g., Scheck*, 357 F.3d at 703 (ALJ used proper procedures when she considered objective medical evidence and the claimant's testimony, including finding testimony as not credible, in determining RFC). As such, an ALJ is not required to believe all of a claimant's testimony and is "free to discount the applicant's testimony on the basis of other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006); *see also Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) ("While a hearing officer may not reject subjective complaints of pain solely because they are not fully supported by medical testimony, the officer may consider that as probative of the claimant's credibility."). Rather, it "is only when the ALJ's determination lacks any explanation or support that it will [be declared] patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (internal citations and quotations omitted).

In this case, the ALJ properly and carefully explained why she found McCain's credibility about the extent of his impairment to be "somewhat limited" when viewed in light of other evidence, including contradictions in his own testimony. (*See* AR 35.) As such, the ALJ did not commit an error in discounting some of McCain's allegations about the severity of his impairment in assessing his RFC.

### *The ALJ's Step Five Finding that McCain Could Perform Jobs*

Finally, McCain argues the Commissioner did not meet her burden of proving that McCain can perform jobs that exist in adequate numbers in the national economy. McCain first argues that the ALJ did not adequately include all of McCain's limitations when she asked the

VE the hypothetical question whether jobs existed that matched McCain's RFC. (AR 38.) Specifically, McCain contends that the ALJ failed to include any specific limitations on concentration, persistence or pace, including Dr. Kravitz's testimony that McCain has moderate difficulties, or his testimony that, if he relied on McCain's relatives' statements, McCain would have moderate to marked difficulties.

McCain essentially rehashes the same argument discussed and rejected above. As noted above, the ALJ's RFC finding reasonably accounted for and was consistent with the limitations identified by Dr. Kravitz. Likewise, the ALJ's hypothetical question to the VE tracked her RFC finding. (*Compare* AR 37 *with* AR 96.) Specifically, the ALJ asked the VE if there were jobs that involved very limited reading; with oral, short and simple instructions; where the applicant "has to be shown what he needs to do, he can't be left with a written sheet telling him what needs to be done"; with incidental contact with the public; with limited interaction with other employees and no joint tasks and limited supervision; and in a routine, predictable and consistent environment. (AR 96.)

In the case cited by McCain, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010), the Seventh Circuit explained that the ALJ is required to generally "orient the VE to the totality of a claimant's limitations," including deficiencies of concentration, persistence and pace. However, the court specifically noted that there is no "per se requirement" that the ALJ mention the specific terminology of "concentration, persistence and pace," and that hypotheticals omitting those terms are acceptable where it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* In *O'Connor-Spinner*, the Seventh Circuit remanded the ALJ's decision because the ALJ failed to expressly refer and account for "all limitations" that the ALJ had found to exist.

12

*Id.* at 618, 621. In contrast, in *Herrold v. Astrue*, No. 2:10-CV-00489-JD, 2012 WL 96735, at *27 (N.D. Ind. Mar. 21, 2012), the district court, distinguishing *O'Connor-Spinner*, affirmed the ALJ's decision where the court found that the ALJ's RFC finding was supported by substantial evidence and where the hypothetical posed by the ALJ to the VE was "entirely consistent" with the ALJ's RFC finding.

As in *Herrold*, the ALJ's RFC finding here was supported by substantial evidence. Likewise, as in *Herrold* and in contrast to *O'Connor-Spinner*, the ALJ expressly accounted for all limitations for McCain's RFC when she posed the hypothetical to the VE. Therefore, the ALJ's hypothetical was not inadequate to capture McCain's RFC.

Finally, McCain argues that the VE's testimony that McCain could perform the jobs of janitor, kitchen helper or hand packager is inconsistent with the skills required for those jobs, as described in the *Dictionary of Occupational Titles* ("*DOT*"). McCain contends that, under the *DOT*, the kitchen helper and hand packager jobs require Level 2 Reasoning skills, and the janitor job requires Level 3 Reasoning and Reading skills, all of which McCain argues exceed his abilities.

An ALJ is required to ask a VE if his testimony conflicts with the *DOT* before relying on that testimony. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The ALJ must also "investigate and resolve any *apparent* conflict" between the VE's testimony and the *DOT*. *Id.* at 570 (emphasis added); *see also* Social Security Ruling 00-4p. A conflict "is apparent if it is 'so obvious that the ALJ should have picked up on [it] without any assistance.'" *Id.* (citing *Overman v. Astrue*, 546 F.3d 456, 462–63 (7th Cir. 2008)). Thus, where a conflict is not apparent, the ALJ will not err in relying on the VE's testimony. *See Weatherbee*, 649 F.3d at 571 (holding that the ALJ did not err where there was no apparent conflict with the VE's testimony). For example, in

*Herrold*, 2012 WL 967354, at *27-29, the district court rejected the claimant's argument that the ALJ's ruling should be set aside because the VE's testimony conflicted with the *DOT*. The court found that the ALJ had specifically directed the VE to the restrictions in the hypothetical and that the VE affirmed that her testimony was consistent with the *DOT*. *Id.*

In this case, ALJ properly oriented the VE to the limitations in McCain's RFC. After the VE testified about janitor, kitchen helper and hand packager jobs, the ALJ asked the VE if his testimony was consistent with the *DOT*, and the VE responded that it was. (AR 96.) As in *Weatherbee* and *Herrold*, there was no apparent conflict, and the ALJ was entitled to rely on the VE's testimony.

Furthermore, it is important to note that courts addressing the Social Security regulations and the *DOT* have noted that there is not a uniform conclusion on the scope of the *DOT*'s Levels for reasoning. This is because the "Social Security regulations and the *DOT* use markedly different standards for addressing a claimant's ability to understand, remember, and concentrate on job duties." *Thompkins v. Astrue*, No. 09 C 1339, 2010 WL 5071193, at *10 (N.D. Ill. Dec. 6, 2010) (citing *Masek v. Astrue*, No. 08 C 1277, 2010 WL 1050293, at *22 (N.D. Ill. March 22, 2010)). "Thus, no one-to-one parallel can be found between 'simple' as it used under the regulations and the *DOT*'s requirements; a task may be 'simple' under the regulations and still involve the kind of 'detailed' tasks required under Level 2 reasoning." *Id.* As such, courts have held that Level 2 is "not inconsistent with a claimant's limitations to simple, routine tasks." *Id.*; *see also Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005) (finding that Level 2 reasoning is consistent with an RFC of simple, routine tasks); *Money v. Barnahrt*, 91 Fed. App'x 210, 214 (3d Cir. 2004) ("Working at reasoning Level 2 would not contradict the mandate that her work be simple, routine and repetitive"); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D.

14

Cal. 2005); *Flaherty v. Halter*, 182 F. Supp. 2d 824, 850 (D. Minn. 2001) (ALJ's finding of limitation to simple, routine, repetitive, concrete, tangible tasks did not conflict with the *DOT*'s Level 2 reasoning requirement).

Thus, in *Thompkins*, the ALJ asked the VE for jobs involving "simple, routine, repetitive tasks," and the VE identified Level 2 jobs, including hand packager. The court noted that the "uninvolved" qualification in Level 2 is consistent with the limitation to "simple" tasks and held that that any error from the ALJ's failure to question the VE about a conflict was harmless. 2010 WL 5071193 at *11. Likewise, in this case, any failure by the ALJ to further question the VE was harmless error. The decision to deny McCain disability benefits is affirmed.

## CONCLUSION

For the foregoing reasons, McCain's Motion for Summary Judgment [11] is denied; the Commissioner's Motion for Summary Judgment [23] is granted; and the Commissioner's final decision is affirmed. The civil case is terminated.

Date:    December  4, 2013          /s/ John W. Darrah
                                                        JOHN W. DARRAH
                                                        United States District Court Judge

15